Cushing, J.
This cause is now heard on the pleadings, the evidence and arguments of counsel. It is sought to partition the property described in the petition. The plaintiff, Annie R. Lawson, claims that she is the owner in fee simple of an undivided one-third interest in said real estate; that Isaac Bates, Ella Egleston and Charles M. Bates are the joint owners as tenants in common of an undivided one-third interest of said property; that Albert McDougal is the owner of an undivided one-third interest in said property, and that the other defendants, namely, Franklin H. Lawson, Fenton Lawson and .Corinne Moore Lawson, F. Roger Lawson, Stanley M. Lawson and Winifred G-oodall Lawson, William C. Lawson, George P. Lawson, Eleanor Johnson Lawson, Annie Lawson Wilcox, Walter D. Wilcox, Laura Lawson Ellis, Frank Ellis, Carrie Calvert Townley, Cecil A. Calvert, Lucinda B. Calvert, the unknown heirs and devisees of Eugene J. Calvert, Nettie Dixon and —— Dixon, the un *651 known heirs and devisees of Nettie Dixon, James J. Muir, Administrator of William H. Calvert, deceased, Charles E. Roth, Treasurer, and the City of Cincinnati, have no interest in said property.
Cecil A. Calvert and Carrie Calvert Townley in their answer and cross-petition claim that the title to said property in fee simple was in Laura Calvert by purchase; that Laura Calvert died intestate, leaving surviving her William H. Calvert, her husband and sole heir at law; that William H. Calvert died intestate, leaving surviving him Carrie Calvert Townley and Cecil A. Calvert; that they are the owners in fee simple of an undivided one-half interest in the premises described in the petition by descent from William H. Calvert; that the other one-half of said property described in the petition is in the brothers and sisters of Laura Calvert.
The question to be determined in this case is the character of the title held by Laura Calvert; that is, whether the property came to her by descent or by purchase. It is the law that in partition cases, if the property is offered for sale, it may be sold either to one of the heirs to the property or to a third person; also that in partition cases where there is an election, that the title to the property taken under such a proceeding bears two characters; first, that as an election to take can only be made by one having an interest in the property, that part of the title vested in the person making the election being an estate in inheritance; and second, that the part for which a money consideration was paid is acquired by purchase.
As I understand the law stated in these two classes of cases, it is that in case of an election, the ancestral title remains in the heir as a title by descent, and that the cash payment made by one to the other or others of the heirs, extinguishes the title by descent of all the parties, except that of the one taking the property. It follows, then, that the title thus acquired is partially by descent and partially by purchase.
In passing upon a similar question, the Supreme Court of Ohio uses the following language:
*652 “The title to so much of the laud as came to the decedent by inheritance remains a title by descent, notwithstanding the proceedings in partition, but the remaining title acquired by such proceedings was a title by purchase.”
Freeman v. Allen et al, 17 O. S., 527. On page 533 of the same report, the court uses this language:
“The theory of the statute would seem to be, that upon a sale' the. entire title may pass to the purchaser; but that on an election by a party, only so much passes as is not already vested in him; or, in other words, that the election operates, in consideration of money paid, to extinguish the title of all the parties except that of the party taking it. The party who elects to take the land, is thus left with a title cast upon him by law to the extent of his inheritance, and with the residue of the title to the full estate perfected by his own act. It follows that his title comes in part by descent and in part by purchase."
Counsel for defendants cited the case of Groves v. Groves, 65 O. S., 442, in support of their contention that the title of Laura Calvert was by purchase and not by descent.
In the Groves case the father conveyed the land to his son in 1875. The deed was of general warranty. The consideration stated was $9,165. The son held the property until 1889. He died leaving his widow surviving him. A controversy then arose between the widow and the brother and sister of the deceased, the widow claiming that her husband held the property by purchase, and the brother and sister claiming that Groves’ title was by deed of gift. The court in its opinion in that case say on pages 447 and 448:
“But be that as it may, it is clear that a deed of conveyance by a grantor to a near relative by blood for no consideration .other than natural love and affection, and so expressed in the deed, is a deed of gift under our statute of descent and distribution. If a valuable consideration such as money or marriage to' be thereafter consummated, is expressed, the title passes by purchase, and not by deed of gift.
“The parties by their deed impress upon the title the character which it is to bear in the hands of the grantee, and those *653 coming after Mm. If they say the consideration is good only, they thereby impress upon the title the character of a deed of’ gift. If they say the consideration is a valuable one, they thereby impress upon the title the character ,of title by purchase.”
Other "cases are cited by counsel for both plaintiff and defendant, but I do not find that either of the cases here cited have been reversed or modified. The question then presents itself as to .whether -these eases are inconsistent, and if not and each states a rule governing the title to real estate, within which-rule, do the facts bring the case at bar?
I do not see -how there can be any conflict between the two-, cases. In the case of Freeman v. Allen, supra, the ancestor held, the property at the date of-his death. He died intestate. The heirs went into court and partitioned the property. The appraisers fixed the -value of one lot at $6,000 and the other at $7,782. An election to take at the appraised value was made- and receipts were passed between the parties for the amounts-of money to be paid respectively. The record does not give the. .form of deed, but it is fair to assume that it was the-usual form of deed in partition proceedings -and stated the consideration, and .the appraised- value. On -page -531 of the Freeman case the court makes the - distinction between title acquired by an act of-the-party and by a title cast upon him by operation-of law. The Freeman case, therefore, is -that the part-of a title that is-east upon a person by operation of law in an election to take all or part of .the property, does not extinguish the title by, descent,, but -that- the part taken by his own' act is a title by -purchase, while in the Groves case, the whole title was taken by Groves, Jr;, by his act in conjunction with that of his father.
In. a dissenting opinion-in the-Freeman ease, Judge Brinker-.hoff uses this language:
“Now it seems to me that the taking of the- land at its appraised value under the statute, by a co-tenant or co-heir,- is' simply a substitute for, and the equivalent of an actual sale; the policy of the law being to make him a favored purchaser as against, strangers. And this view derives strength from the *654 consideration that if two or more of the co-tenants elect to take at the appraisement, an actual sale will be peremptorily ordered; in order to swell the proceeds for the impartial benefit, of all. And this conclusion is further strengthened by the fact that after an election by a co-tenant to take at the appraisement, the sheriff conveys to him the whole of the land which he elects to take, the same as if it has been subjected to actual sale.”
It seems to me in the case at bar, that notwithstanding the fact that Laura Calvert bid at the sheriff’s sale for the property and took it, and in view of the further fact that her interest in the whole property was found to be $9,362.29, and that the value of ' the property partitioned was $21,205.07, and that the part she took at the sheriff’s sale was of the value of $11,-243.39, that therefore the law ought to be that the part of the property that she inherited was as $9,362.29 is to $21,205.07. For the purpose of this opinion I shall treat the interest that Laura Calvert had in the property as three-sevenths of the whole property; that is, the title to three-sevenths of the said property was cast upon -her by operation of law.
It is the law that if A die intestate and leave B and C as his heirs, that whatever title A had to real estate vested immediately in B and C by operation of law, and that the only way they may be divested of that title is either by their own acts or by a decree of a court in a proper proceeding. In the partition sale therefore, Laura Calvert had title to three-sevenths.' approximately, of this property up to and at the time of the sale. The order of sale did not divest her of title to the property. The sheriff’s deed could not be made until after the sale, therefore no act of court could divest Laura Calvert of her title in the property amounting to three-sevenths of the entire estate. She became a purchaser at the sheriff’s sale, and must we say then, that by a fiction of law she was divested of the title by descent because she bid as against the world, and the title would be re-transferred to her by a court, in a court proceeding in another and' different form than that already held by her.
Neither the sheriff nor the court ever had title to the property. Laura Calvert took a piece of property in the partition *655 proceeding in which she already had an estate by inheritance. It could not be held that she purchased from herself. If not, how was she divested of the title .she held by descent?
In the Freeman case, supra, the Supreme Court seems to have held, that the offering of property for sale in a partition proceeding, and its subsequent sale even to the persons owning it, divested the owners of the estate they held in the same property and re-transferred it to them, impressed with another and different character' that it was to bear after said sale. Judge Brinkerhoff, in the dissenting opinion in the Freeman case, held that a sale in a partition proceeding was simply a substitute for and-the equivalent of an election to take. And why should it not be so? The court could but determine the rights and interest of the litigants. The law provided two methods by which the value of the estate could be determined, by appraisement and by presentation to the public through the medium of a sheriff’s sale.
This proceeding could not divest Laura Calvert of the three-sevenths interest she had in the property.
The court in ease No. 113014 on the docket of this court could not warrant the title to the property, it could but transfer, the title that the parties to the action had. Then if Laura Calvert-held three-sevenths of the estate by descent, how could the court transfer to her a title by purchase in the same property? It. seems to me that the law ought to be that the title to property that came by descent, devise or deed of gift ought to bear the character of ancestral property until the title to the same has actually passed out of the person on whom the same is cast.
The Supreme Court of Ohio in the Freeman case laid down a different rule.
In passing on a question of title in a partition proceeding the Supreme Court of Indiana say:
“Where a widow purchased land of which her husband died seized, at a commissioner’s sale under proceedings in partition, she stands in the same condition with respect to the sale as a stranger, and takes the land by purchase and not by descent.” McMakin v. Michaels, 23 Ind., 462.
*656 In the court’s opinion at'page 464:
“With respect to her purchase at the commissioner’s sale, she stands in the same condition as a stranger. It is true she paid the purchase price in part out of her portion of the proceeds of the land of which-her husband died seized; but if a stranger’ had purchased the land, the money in the hands of the widow could not have been treated as lands descended to her from her husband."
Team nut agree with the reasoning of the court in the case just cited. If the widow parted with the title she had by descent and accepted the money for the land and had a right so to do, no one would contend that the money should be treated as real estate.
But in the McMakin, the Freeman and this ease, the person having a vested interest'in real estate, by descent, continued to hold the title to the' sainé to the’ extent of their interest, and while I can not agree with the court, I am bound by its decision.
Contrary to my own views, the conclusion, based on decision of the Supreme Court of Ohio ih the Freeman case, is that Laura Calvert, at her decease, held whatever interest she had in the property described in the petition, by purchase and not by descent;
A decreé may be drawn accordingly.